J-S72040-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: M.A.O.R., A/K/A M.O., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: V.R.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 657 MDA 2018 |

Appeal from the Decree Entered March 14, 2018
In the Court of Common Pleas of Berks County Orphans' Court at No(s):
85415

| | | |
|---|---|---|
| IN RE: A.Y.O.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: V.R.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 658 MDA 2018 |

Appeal from the Decree Entered March 14, 2018
In the Court of Common Pleas of Berks County Orphans' Court at No(s):
85416

| | | |
|---|---|---|
| IN RE: V.O.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: V.R.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 659 MDA 2018 |

Appeal from the Decree March 14, 2018
In the Court of Common Pleas of Berks County Orphans' Court at No(s):
85417

BEFORE:  BOWES, J., SHOGAN, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.:                **FILED: MAY 20, 2019**

V.R.L. ("Mother") appeals from the orphans' court decrees entered on March 14, 2018, that granted the petitions filed by the Berks County Office of Children and Youth Services ("CYS") to involuntarily terminate her parental rights to three minor children: M.A.O.R., born January 2009; A.Y.O.R., born July 2010; and V.O.R., born June 2013. We affirm.

The family became involved with CYS during May of 2015 due to Mother's inadequate parental supervision, deficient parental skills, and neglect of the children's basic needs. The agency was also concerned about Mother's mental health, substance abuse, and susceptibility to domestic violence. Within a month, the juvenile court adjudicated the three children dependent and placed them together in their current foster home, a pre-adoptive resource.

The juvenile court ordered Mother to participate in parenting education, complete a mental health evaluation and follow recommendations, obtain stable and appropriate housing, and continue employment. She was also required to maintain contact with CYS, complete casework services through third-party referrals, and follow recommendations. In addition, Mother was ordered to comply with random urinalysis, complete a drug and alcohol evaluation, and follow recommendations. Mother's compliance with the court-sanctioned reunification plan was inconsistent during the course of the dependency proceedings.

On March 30, 2017, CYS filed petitions to involuntarily terminate Mother's parental rights to M.A.O.R., A.Y.O.R., and V.O.R. pursuant to 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b). The orphans' court conducted a hearing on February 26, 2018.[1] CYS called one witness, Melissa Evans, the CYS caseworker who maintained the family's case file. The witness's testimony was guided by a twenty–page case summary that she prepared in anticipation of the hearing. CYS marked the summary as Exhibit 79, and sought to admit it into evidence as part of a packet of eighty-one exhibits.

Mother leveled hearsay objections to the admissibility of nearly all of the exhibits, and following argument, the orphans' court granted CYS's request to take judicial notice of all but three exhibits. Specifically, the court took judicial notice of "all the documents that were submitted and incorporated in [the] prior [dependency] hearings." N.T., 2/26/18, at 101. Of the three exhibits that remained subject to Appellant's hearsay objections, the orphans' court admitted Exhibit 71 and Exhibit 80, two sets of documents that outlined Mother's record of attendance at random drug tests and reported the attendant results, under the medical records exception to the rule against hearsay. *Id*. Thereafter, approximately two weeks after the hearing, the

---

[1] The children's legal interests were represented during the contested involuntary termination of parental rights proceedings by Melissa Krishock, Esquire, the guardian *ad litem* appointed to represent the best interests of the children during the dependency action. Attorney Krishock confirmed that no conflict existed in her simultaneous representation of the children's best interests and legal interests, having talked to the children and discerned the children's preference to be adopted by their foster parents. N.T., 2/26/18, at 98, 116-17.

orphans' court admitted without explanation Exhibit 79, the twenty–page case summary that guided Ms. Evans's in-court testimony. *See* Orphans' Court Order, 3/14/18, Document # 17.

On March 14, 2018, the orphans' court terminated Mother's parental rights to M.A.O.R., A.Y.O.R., and V.O.R. Mother filed timely notices of appeal and complied with Pa.R.A.P. 1925(a)(2)(i) by simultaneously filing concise statements of errors complained of on appeal.

Mother presents five issues for our review.

A. Whether the trial court erred as a matter of law and abused its discretion by permitting [CYS] to submit inadmissible hearsay evidence, to wit: a voluminous packet of exhibits—including various reports from service providers, evaluations, case notes from third parties not present at the hearing—all of which were submitted for the truth of the matters asserted therein, and not covered by any hearsay exceptions under the Pennsylvania [R]ules of [E]vidence?

B. Whether the lower court erred as a matter of law and abused its discretion in its evidentiary rulings at hearing and in the order entered March 14, 2018, by admitting Exhibit no. 79 inadmissible hearsay evidence, to wit: the summary of court proceedings outline which of the caseworker's rendition of the court proceedings and casework session, counseling and of the services or events, all of which were submitted for the truth of the matters asserted therein and not covered by any hearsay exception under the Pennsylvania Rules of Evidence?

C. Whether the trial court erred in its evidentiary ruling at trial by permitting [CYS] to present hearsay testimony by the [CYS] caseworker?

D. Whether the trial court erred in determining that [CYS] met its burden of proving by clear and convincing evidence that the statutory grounds for termination in 23 Pa.C.S.A. § 2511 had been met?

E.      Whether the trial court erred in determining that [CYS] met its burden of proving by clear and convincing evidence that termination best meets the needs and welfare of the child[ren] as required by 23 Pa.C.S.A. § 2511(b)?

Mother's brief at 4.

We review these claims mindful of our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record.  If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion.  A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.  The trial court's decision, however, should not be reversed merely because the record would support a different result.  We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

As Mother presents a single argument supporting her first three issues, we address those claims collectively.  Mother contends that the orphans' court's admission of the CYS exhibits over her hearsay objection, particularly the case summary marked Exhibit 79, was contrary to our Supreme Court's recent holding in *In re A.J.R.-H.*, 188 A.3d 1157 (Pa. 2018).  In that case, the Court overruled the orphans' court's wholesale admission of 167 exhibits under the business records exception to the prohibition against hearsay, and concluded that the court's evidentiary error could not be excused as harmless.

Significantly, Mother does not invoke the Supreme Court's holding in *In re A.J.R.-H.*, for the specific proposition that en masse admission of exhibits is reversible error *per se*, as that was not our Supreme Court's holding. In actuality, Mother relies upon our High Court's discussion to highlight that the orphans' court's admission of the "documents **without proper foundation**, specifically . . . the admission of [E]xhibit 79, the [case summary], is reversible error." Mother's brief at 9. (emphasis added). Mother continues, "it cannot be asserted that the admission of said documents was harmless error in that the caseworker testified ongoingly [sic] to hearsay based on the documents offered as exhibits[.]" *Id*.

The only aspects of the orphans' court's evidentiary determination that is subject to Mother's hearsay challenge relate to the court's admission of Exhibits 71, 79, and 80 because the court took judicial notice of the information in the other seventy-eight exhibits without objection. Thus, we limit our review to whether Mother's hearsay argument has merit pursuant to the Supreme Court's discussion in *In re A.J.R.-H.*

In *In re A.J.R.-H.*, the Supreme Court rejected the orphans' court's rote admission of a collection of exhibits under the business records exception, without proper foundation. The High Court reasoned,

> Without question, the manner in which these exhibits were admitted into evidence in the first instance failed to satisfy the requirements of the business records exception. CYS did not present any witness in support of the exhibits' admission, let alone "the custodian or other qualified witness." *See* 42 Pa.C.S. § 6108(b); Pa.R.E. 803(6)(D). Instead, all of the exhibits were

presented to the court for admission, in bulk, by the county solicitor prior to calling any witnesses to testify. N.T., 8/12/2016, at 16. There was also no testimony of record that someone with knowledge created any of the 167 exhibits at or near the time of the event or that they were created in the regular practice of the various agencies from which the documents came. *See* 42 Pa.C.S. § 6108(b); Pa.R.E. 803(6)(A), (C). Additionally, none of the documents were certified copies. *See* Pa.R.E. 803(6)(D), 902(11). The only information provided at the time of the exhibits' admission was the county solicitor's assurance, in response to the leading question posed by the orphans' court, that the exhibits were contained in CYS's files and "were collected in the ordinary course of business with regard to this case." N.T., 8/12/2016, at 18-19; *see* 42 Pa.C.S. § 6108(b); Pa.R.E. 803(6)(B).

*Id*. at 1167-68 (footnote omitted). Thus, the High Court held that it was error for the orphans' court to admit the exhibits without first establishing the proper foundation to support the business records exception. As the exhibits were not prepared by the testifying witnesses, and CYS neglected to lay a foundation with regard to their preparation, the exhibits were held to be inadmissible.

Furthermore, as it relates to whether the evidentiary error was harmless in light of the concurrent testimony that CYS adduced at the evidentiary hearing, the High Court stressed, "the standard for finding harmlessness in a termination case requires us to conclude that the evidentiary error could not have had any impact upon the orphans' court's decision." *In re A.J.R.-H.*, *supra* at 1175. Notably, it continued, "[t]hat there may have been properly admitted evidence sufficient to support termination does not render the orphans' court's substantial evidentiary error harmless." *Id*.

- 7 -

Thereafter, the ***In re A.J.R.-H.*** Court clarified that, while couched as harmless error, this Court's practice of affirming a trial court decision on any basis supported by the certified record is, in reality, an application of the "right for any reason" doctrine. ***Id***. at 1176. Importantly, the Court observed that this doctrine is inappropriate where an unresolved dispute of fact exists. It explained, "appellate courts should refrain from assuming the role of a fact-finder in an attempt to sustain the action of the court below." ***Id***. (quoting ***Bearoff v. Bearoff Bros., Inc.,*** 327 A.2d 72, 76 (Pa. 1974)). Hence, according to the High Court, the right for any reason doctrine "may not be used to affirm a decision when the appellate court must weigh evidence and engage in fact finding or make credibility determinations to reach a legal conclusion." ***In re A.J.R.-H.***, ***supra*** at 1176.

Instantly, the orphans' court neglected to identify which exception to the rule against hearsay it invoked to admit Exhibit 79, Ms. Evans's case summary. Notably, that exhibit is comparable to the "termination testimony," marked as Exhibit 161, which was a point of contention in ***In re A.J.R.-H***. ***Id***. at 1162-63. In the same manner that Ms. Evans relied upon Exhibit 79 throughout her testimony, the Supreme Court noted that "[a]t various points throughout her testimony, [the CYS witness] referred to her written summary of the case (Exhibit 161) to answer questions posed to her about the family." ***Id***. at 1164.

- 8 -

The **In re A.J.R.-H.** Court held that the written summary was inadmissible because, although it was created by the testifying caseworker, it was an aggregate of information from various unknown sources and prior caseworkers who did not provide corresponding documentation. As the Supreme Court noted, Exhibit 161 "is comprised almost exclusively of additional hearsay statements (some with multiple levels of hearsay), for which no exception to the prohibition against hearsay was offered before the orphans' court." *Id*. at 1170. Indeed, citing **In re Involuntary Termination of Parental Rights (Jones)**, 297 A.2d 117, 121 (Pa. 1972), the Court reiterated that "we have long recognized that summaries of this nature are not admissible at termination proceedings" and observed that, while the summary may qualify as a business record insofar as it was compiled by the testifying caseworker, application of the exception was inappropriate because the summary lacked any foundation regarding the "sources of information and the time and manner of preparation." **In re A.J.R.-H. supra** at 1170 (quoting **Jones**, **supra** at 121). Hence, the Supreme Court held that the orphans' court committed an abuse of discretion in admitting the myriad exhibits, including Exhibit 161, under the business record exception without requiring CYS to satisfy the foundational prerequisites.

For the same reasons that the Supreme Court found Exhibit 161 inadmissible in **In re A.J.R.-H.**, we conclude that the orphans' court erred in admitting Exhibit 79 in the case at bar. In anticipation of her testimony, Ms.

Evans created an aggregate summation of relevant information that she compiled from various undocumented sources. While it is possible that Exhibit 79 could qualify as a Pa.R.E. 803(6) business records hearsay exception, CYS neglected to proffer any foundational basis for the admission of the exhibit, or the numerous separate documents contained therein, and the orphans' court failed to identify which exception applied to warrant admission of the evidence over Mother's hearsay objection.

For similar reasons, the urine screens, marked as Exhibits 71 and 80, are not admissible under the medical records exception found at Pa.R.E. 803(4) because CYS failed to proffer a foundation for their admission. The orphans' court's declaration that the exhibits fall within that exception is woefully inadequate as it is beyond peradventure that merely stating that a document is a medical record is insufficient to permit its admission into evidence. *Commonwealth v. Fink*, 791 A.2d 1235, 1246 (Pa.Super. 2002). The *Fink* Court expounded on this reality as follows,

> The medical treatment exception provides that testimony repeating out-of-court statements made for the purposes of receiving medical treatment are admissible as substantive evidence. . . . [A] statement comes within this exception when two requirements are met: (1) the declarant must make the statement for the purpose of receiving medical treatment, *e.g.*, statements relating to the cause of the injury, including testimony repeating statements made to nurses for the purposes of medical treatment and diagnosis; and (2) the statement must be necessary and proper for diagnosis and treatment, *e.g.*, statements to medical personnel as to how the person sustained the injuries, but not the identity of the perpetrator.

*Id*. at 1246 (citing **Commonwealth v. Smith**, 681 A.2d 1288, 1291 (Pa. 1996)).

Instantly, CYS neglected to demonstrate that the two exhibits, which track Mother's attendance record and the results of the random urine screens, were made for the purposes of receiving medical treatment or that they were necessary for medical diagnosis and treatment. As these foundational prerequisites are absent herein, the orphans' court erred in admitting the exhibits under the medical records exception outlined in Pa.R.E. 803(4).

Next, having explained that the orphans' court erred in admitting all three exhibits over Mother's hearsay objections, a developed analysis of the error is warranted pursuant to **In re A.J.R.-H.** Preliminarily, we observe that, since Ms. Evans's in-court testimony was founded on the same out-of-court statements she compiled in Exhibit 79, her admittedly duplicative testimony is insufficient to cure the orphans' court's error in admitting the inadmissible hearsay.[2] **See In re A.J.R.-H.,** at 1172-73; citing **Jones**, **supra** (caseworker could not testify to substance of inadmissible documentary evidence); and **In re Sanders Children**, 312 A.2d 414, 416 (Pa. 1973) ("The witness'[s] first-hand knowledge of some of the facts contained in the report cannot justify the

---

[2] The certified record is replete with examples of Ms. Evans's reference to the exhibit prior to answering questions posed during both direct examination and cross examination. **See e.g.**, N.T., 2/26/18, at 46, 61, 96.

- 11 -

admission of otherwise incompetent hearsay testimony drawn from the same report.").

The *In re A.J.R.-H.* Court confronted this precise scenario and, relying upon the foregoing precedent, it reasoned,

> As in *Jones* and *In re Sanders Children*, [the case worker] in the case at bar admitted that the majority of her testimony was not based on her firsthand knowledge about the family, and instead that she relied on reports from prior CYS caseworkers and third-party service providers. It could not have been otherwise, as [the case worker] only assumed responsibility for the case in February 2016, around the time that CYS filed the petitions to terminate Mother's parental rights to the Children. Throughout her testimony, [the caseworker] regularly had to refer to the exhibits (in particular, Exhibit 161) to provide answers to questions posed to her regarding the history of CYS's involvement with the family and the parties' compliance with the court ordered services. No other witness provided any testimony in support of the above-findings made by the orphans' court in support of termination.

*In re A.J.R.-H.*, at 1173 (internal citation to record omitted).

Since Ms. Evans's in-court testimony was drawn from Exhibit 79, we cannot simply rely upon that testimony to remedy the orphans' court's error in failing to sustain Mother's hearsay objection to that exhibit.[3] However, unlike the Supreme Court's ultimate disposition in *In re A.J.R.-H.*, our review of the seventy-eight exhibits of which the orphans' court took judicial notice

---

[3] As Ms. Evans was the adoption caseworker, she had ample first-hand knowledge of the children's interactions with Mother and their foster parents, respectively. Hence, Ms. Evan's testimony concerning the children's needs and welfare pursuant to 23 Pa.C.S. § 2511(b) is not tainted by her references to Exhibit 79.

- 12 -

confirms that the certified record supports the orphans' court's decision to terminate Mother's parental rights notwithstanding its admission of Exhibit 79.

Importantly, the state of the certified record, which is flush with judicially-noticed facts, is a significant departure from the circumstance that the High Court confronted in *In re A.J.R.-H.* Indeed, the packet of judicially-noticed exhibits includes six sets of permanency review hearings and their accompanying findings of fact that provide the narrative of Mother's progress between the first permanency review hearing during November 2015 and the permanency review hearing that preceded the orphans' court proceeding on February 2018. *See* CYS Exhibits 19-21, 22-24, 28-30, 34-36, and 46-51. In sum, that evidence reveals Mother's noteworthy progress during the first several months of the dependency proceedings. During this period, Mother demonstrated substantial compliance with the reunification plan and moderate to substantial progress toward alleviating the circumstances that led to the children's placement. Mother's attendance at the drug screens remained inconsistent, however, and she was discharged from a mental health program due to non-attendance. Nevertheless, Mother maintained full-time employment and independently obtained appropriate housing.

However, these gains were ephemeral. After CYS granted Mother unsupervised overnight visitation with the three children, a precursor to reunification, Mother initiated a campaign of self-sabotage that culminated in CYS filing the petitions to terminate her parental rights. Between February

2017 and January 2018, Mother made little progress toward reunification. She began by disappearing for two months without contacting CYS or the children. When Mother reappeared, she did little more than maintain employment and attend supervised visitations, which CYS reduced in frequency and duration. Mother's housing was sporadic, and she was uncooperative with CYS, her service providers, and mental health counselors. Mother was twice discharged from outpatient therapy for non-attendance, and after the program readmitted her, it deemed her highly apathetic and lacking a genuine commitment to treatment. Similarly, Mother attended random drug screens infrequently, submitted diluted urine samples, and tested positive for K2 (a synthetic cannabinoid) on several occasions.[4]

In addition, Mother's unhealthy behavior remained a prevailing concern, as is highlighted by her irresponsible conduct and unwillingness to address her issues with domestic violence. For example, due to Mother's noncompliance with the terms of her participation in the accelerated rehabilitative disposition ("ARD") program in relation to a 2015 offense, the criminal court revoked ARD and issued a bench warrant for her arrest during April 2017. Likewise, Mother continued to minimize the significance of her extensive history with domestic violence, and she justified her victimization. In this vein, Mother filed a petition for protection from abuse ("PFA") against her quarrelsome paramour,

---

[4] Nearly all of the evidence contained in the drug screen exhibits, Nos. 71 and 80, could be gleaned from the judicially-noticed orders.

- 14 -

but she elected to withdraw the petition before the entry of a final PFA order. As of December 2017, Mother maintains a relationship with her alleged abuser.

Having reviewed all of the judicially-noticed facts, it is obvious that no unresolved dispute of fact exists which would require this Court to engage in fact finding, weigh evidence, or make credibility determinations. Hence, the underlying evidentiary errors "could not have had any impact upon the orphan's court's decision," *In re A.J.R.-H.*, *supra* at 1175. Accordingly, the orphans' court's evidentiary errors were harmless.

Next, we address Mother's remaining argument that the orphans' court erred in finding that CYS demonstrated by clear and convincing evidence the statutory grounds to terminate her parental rights to M.A.O.R., A.Y.O.R., and V.O.R. From what we can glean from Mother's scant argument, she contends that, after omitting the improperly admitted evidence from consideration, the remaining evidence was insufficient to support the termination of her parental rights. Mother's assertion fails.

Termination of parental rights is governed by § 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests

- 15 -

of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted).

Instantly, the orphans' court terminated Mother's parental rights pursuant to § 2511(a)(1), (2), (5) (8), and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . . .

- 16 -

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

. . . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).

First, it is a well ensconced legal principle that appellate courts do not review sufficiency claims on a diminished record. *See e.g.*, ***D'Alessandro v. Pennsylvania State Police***, 937 A.2d 404, 410 (Pa. 2007) (plurality) (quoting ***Commonwealth v. Lovette***, 450 A.2d 975, 977 (Pa. 1982)) ("A sufficiency claim will not be reviewed on a diminished record, 'but rather on the evidence actually presented to the finder of fact rendering the questioned verdict.'"); ***Commonwealth v. Weaver***, 76 A.3d 562, 569 (Pa.Super. 2013) (law is clear that we are required to consider all evidence that was actually received without consideration as to admissibility of evidence or whether

court's evidentiary rulings were correct). Thus, Mother's predicate contention that we must disregard the improperly admitted evidence is baseless.

Moreover, as outlined *supra*, and for the reasons cogently articulated in the orphan's court opinion, CYS adduced ample evidence to sustain its burden of proof. Thus, after a thorough review of the certified record, the parties' briefs and the pertinent law, we affirm the March 14, 2018 decrees on the basis of the well-reasoned trial court opinion entered on May 14, 2018, by the distinguished Judge Benjamin Nevius.

Decrees affirmed.

Judge Shogan joins the memorandum.

Judge Kunselman files a concurring statement.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/20/2019

Received 6/18/2018 12:49:59 PM Superior Court Middle District

Filed 6/18/2018 12:49:00 PM Superior Court Middle District
657 MDA 2018

IN RE:

              : OF BERKS COUNTY, PENNSYLVANIA
              : ORPHANS' COURT DIVISION
              :

  M.A.O.-R.              : No. 85415
  A.Y.O.-R.             : No. 85416
  V.O.-R.                : No. 85417

Jennifer L. Grimes, Attorney for BCCYS, Petitioner/Appellee
Melissa Krishock, Guardian *Ad Litem*
Kathleen Dautrich, Attorney for N.R., Mother

OPINION, J. Benjamin Nevius, J.                Dated: May 11, 2018

This matter arises from separate petitions (the "Petitions") filed by Berks County Children and Youth Services ("BCCYS") to terminate the parental rights of V.R.-L. ("Mother"), M.O.-M. ("Father"), and/or anyone else claiming paternity of three minor children, M.A.O.-R. (born 2009), A.Y.O.-R. (born 2010), and V.O.-R. (born 2013) (collectively, the "Children"), pursuant to Section 2511 of the Adoption Act, 23 Pa. C.S.A. §§ 2101, *et seq.* (the "Act").

On March 31, 2017, BCCYS filed a Petitions for Involuntarily Termination of Parental Rights relative to Mother, Father, and/or anyone else claiming paternity of the Children (the "Petitions") pursuant to Section 2511 of the Act. On February 26, 2018, the Court presided over a hearing on BCCYS's Petitions. Mother was present in the courtroom with her court-appointed attorney. Father did not attend and, in fact, has not participated in any proceedings in dependency or before the Orphans' Court relative to the Children.

On February 26, 2018, the Court entered separate Orders terminating the parental rights of Father and/or anyone else claiming paternity of the Children. On March 14, 2018, and much careful consideration, the Court entered a separate Final Decree terminating the parental rights of Mother, finding that BCCYS had established its burden by clear and convincing evidence.[1] On

---

[1] Father has not appealed the Court's Final Decree terminating his parental rights. Accordingly, this Opinion addresses Mother's appeal and the termination of her parental rights, only.

MAY 14 2018

Filed
Berks County, Pennsylvania Orphans' Court Div.

April 13, 2018, Mother filed a Notice of Appeal (the "Notice") and a Statement of Matters Complained of on Appeal (the "Statement"), raising five issues for consideration on appeal:

(1)     The trial court erred as a matter of law and abused its discretion by permitting the Appellee BCCYS to submit inadmissible hearsay evidence, to wit: a voluminous packet of exhibits-including various reports from service providers, evaluations, case notes from third parties not present at the hearing—all which were submitted for the truth of the matters asserted therein, and not covered by any hearsay exception under the Pennsylvania Rules of Evidence.

(2)     The lower court erred as a matter of law and abused its discretion in its evidentiary rulings at hearing and in the Order entered March 14, 2018, by admitting Exhibit No 79, inadmissible hearsay, to wit: the summary of court proceedings outline which of the caseworker's rendition of the court proceedings and casework session, counseling and of the services or events, all of which were submitted for the truth of the matters asserted therein and not covered by any hearsay exception und the Pennsylvania Rules of Evidence.

(3)     The trial court erred in its evidentiary ruling at trial by permitting BCCYS to present hearsay testimony by the BCCYS caseworker.

(4)     The Trial court erred in determining that the Berks County Office of Children and Youth Services (BCCYS) met its burden of proving by clear and convincing evidence that the statutory grounds for termination in 23 Pa.C.S.A §2511 has been met.

(5)     The trial court erred in determining that BCCYS met its burden of proving by clear and convincing evidence that termination best meets the needs and welfare of the child as required by 23 Pa C.S.A §2511(b).

[*See* Statement, p. 1].

In sum, Mother argues that the Court made a number of mistaken evidentiary rulings pertaining to hearsay, and that the Court erred in finding that (a) parental rights should be

2

terminated, and (b) that termination best meets the needs and welfare of the Children. [*Id.*, pp. 1-2]. Mother failed to request a transcript of the proceedings. This Opinion follows.[2]

## WAIVER

As an initial matter, it is well settled that an appellate court may only consider facts which have been duly certified in the record on appeal. *See Murphy v. Murphy*, 599 A.2d 647, 652 (Pa. Super. Ct. 1991). Furthermore, the appellant is responsible for providing the Superior Court with the complete record for review. *See Com. v. Feflie*, 581 A.2d 636, 640 (Pa. Super. Ct. 1993). "Where a claim is dependent upon materials not provided in the certified record, the claim is considered waived." *Com. v. Proetto*, 771 A.2d 823, 834 (Pa. Super. Ct. 2001)."

Here, a review of the issues raised by the Mother is dependent upon a transcript of the proceedings that documents both proper preservation of issues and the bases for the Court's decision to terminate parental rights. Mother's failure to have the hearing transcribed for official use should result in a waiver of all issues on appeal.

## BASES FOR TERMINATION

Substantively, the Court terminated Mother's parental rights based upon her failure to comply with Court-ordered services, treatment, and testing. BCCYS established by clear and convincing evidence that, despite numerous chances, Mother failed to recognize or remedy unsafe conditions presenting a danger to herself and to her Children.

---

[2] "The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings." *In re Adoption of A.C.*, 162 A.3d 1123, 1128 (2017) (citing *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013)); *see also In re Adoption of S.P.*, 47 A.3d 817, 826–27 (Pa. 2012) ("[E]ven where the facts could support an opposite result, as is often the case in . . . termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment").

3

On May 26, 2015, the Hon. Maryann Ullman of the Court of the Berks County Court of Common Pleas entered an Order adjudicating the Children dependent, requiring that Mother comply with certain services, treatment, and testing. The Court expanded that list of obligations through subsequent Orders entered in connection with the dependency proceedings as a result of Mother's continued failure to make suitable progress. Among other things, the Court ordered Mother to:

    (a)    Undergo a mental health evaluation and comply with any treatment recommendations;

    (b)    Establish and maintain suitable and appropriate housing and income;

    (c)    Notify BCCYS of changes in income or residence;

    (d)    Participate in casework sessions through BCCYS and comply with any recommendations;

    (e)    Undergo a drug and alcohol evaluation and comply with any treatment recommendations; and

    (f)    Undergo random urinalysis.

Since May 2015, Mother has failed to satisfactorily participate in these Court-ordered services, among others. For example, Mother inconsistently attended monthly casework meetings with BCCYS and failed to comply with recommendations. BCCYS caseworker, Sara Evans ("Ms. Evans"), indicated that Mother initially appeared motivated to participate in programs and casework sessions, but that Mother failed to follow through. Ms. Evans testified that Mother would pretend as though she was hearing about Court-ordered services for the first time each time that she met with BCCYS.

Recently, third-party service provider, Justice Works Youth Care ("Justice Works"), reported to BCCYS that Mother failed to appear for four sessions in December 2017, at which time BCCYS had arranged for weekly meetings. Further, Mother promised to provide information to BCCYS regarding her mental health treatment and providers, but failed to do so. Ultimately, Justice Works discharged Mother for non-compliance and minimal progress.

4

With regard to stable housing, Mother moved nine times over the course of three years, mostly residing with family and friends. She frequently failed to advise BCCYS of her changes in residence. In fact, BCCYS was unaware where Mother was residing immediately prior to the hearing on the Petitions. As recently as July 2017 (months **after** BCCYS filed the Petitions to terminate her parental rights), Mother averred to a service provider in an application for housing assistance that she was homeless, living out of a car, and without food. Further, Ms. Evans reported that Mother changed her telephone numbers numerous times without informing BCCYS, making it nigh impossible for BCCYS to contact and remind Mother about appointments and other obligations.

Although Mother, for the most part, consistently participated in visitation with the Children, she engaged in conduct for a period of time that Ms. Evans described as "self-sabotage." Specifically, in January 2017, BCCYS was working toward overnight visitation with Mother, with the goal of reunification. Mother, however, disappeared and ceased attending visitation completely. One month later, in February 2017, Mother contacted BCCYS and advised that she was "hiding out" to avoid contact with an ex-paramour who had assaulted Mother. Mother revealed that she was in an abusive relationship during this period and did not want the Children to see her. Ms. Evans also reported that Mother admitted to frequent substance abuse – K2 – during this period.

With regard to substance abuse, Mother failed to acknowledge, much less properly address, these issues or comply with Court-ordered treatment and testing. Ms. Evans indicated that, since 2015, Mother engaged and disengaged in drug and alcohol treatment/counseling numerous times. Throughout her treatment, counselors reported that Mother appeared "ambivalent" and unmotivated to participate in treatment. Mother appeared to be "in denial" and

5

"minimized" her issues. As a result, Mother's counselors discharged her for non-compliance multiple times. In January of this year – 10 months after BCCYS filed its Petitions to terminate Mother's parental rights – she sought to reengage in drug and alcohol counseling.

With regard to testing, Mother missed 66 of her 118 scheduled screenings, had a number of diluted screenings, and tested positive seven times for K2. The most recent positive test came in July 2017, more than three months after BCCYS filed the Petitions. As Ms. Evans observed during the hearing on the Petitions, this was the same period during which Mother produced a number of diluted urine samples. To this date, concerns remain about Mother's sobriety, as she provided four diluted samples and failed to attend four screenings immediately prior to the termination hearing from December 19, 2017 through February 20, 2018.

Additionally, Mother had been required to participate in mental health and domestic violence evaluations, as well as participate in any counseling recommended as a result of those evaluations. Although Mother purported to participate in some individual mental health therapy, Ms. Evans and others were unable to confirm what services Mother participated in because Mother did not provide the necessary information to BCCYS.

With regard to domestic violence concerns, as indicated above, in early 2017, Mother advised BCCYS that she was "hiding out" to escape an abusive relationship. The alleged abuser resided with Mother at the time. BCCYS identified this concern, among others, during the dependency proceedings, and the Court required Mother to participate in domestic violence counseling. Although Mother attended her domestic violence evaluation and began treatment, she shortly thereafter started failing to appear for sessions. As a result, in January 2018, Mother's domestic violence counselor discharged her from treatment. In conversations with Ms.

6

Evans about the situation, Mother minimized the risk and failed to recognize the dangers of an abuser living in the home with her Children.

While all of this was going on with Mother, the Children had been bonding and attaching with their foster parents, most notably looking at them as being their parents. Although Mother has a bond with the Children, and although she clearly loves them very much, all evidence points toward the best interests of the Children being served by remaining with their resource family. Ms. Evans testified the Children are doing well in their placement and that they have bonded with their foster parents. Further, Ms. Evans testified that the Children expressed their desire to remain in the care of their foster parents. Ms. Evans observed the Children interacting with the foster parents, and her observations were consistent with the desires expressed to her by the Children. Ms. Evans observed the Children telling the foster mother that they loved her, and she noted that the Children are clearly bonded with the foster parents -- they look to their foster parents for love, safety, and support.

Section 2511 of the Act provides, among other things, that parental rights in regard to a child may be terminated if/when:

> (1)    The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties;
>
> (2)    The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the Children to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent;
>
> (5)    The Children has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led

7

to the removal or placement of the Children continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the Children within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the Children; and

(8)     The Children has been removed from the care of the parent by the court or under a voluntary agreement with an agency, twelve months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the Children continue to exist and termination of parental rights would best serve the needs and welfare of the Children."

See 23 Pa. C.S.A. § 2111(a)(1), (2), (5), and (8).

Section 2511 further provides that, "[w]ith respect to any petition filed pursuant to (a)(1), (6), or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa. C.S.A. § 2511(b). "Parental rights may not be preserved by waiting for some more suitable financial circumstance or convenient time for the performance of parental duties and responsibilities." *In re: D.J.S.,* 737 A.2d 283, 287 (Pa. Super. Ct. 1999). The long-standing law of the Commonwealth is that the inability of a parent to perform parental duties makes him or her just as parentally unfit as a parent who refuses to perform these duties. *In re: B.L.W.,* 843 A.2d 380, 388 (Pa. Super. Ct. 2004).

Regardless of inability or refusal, once a parent demonstrates a failure to fulfill his or her parental duties,[3] the child's right to fulfillment of his or her potential in a permanent, healthy,

---

[3] There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance. *In re Adoption of A.C.,* 162 A.3d at 1129.

8

safe environment with proper parenting supersedes the parent's basic constitutional right to custody and rearing of the child. *Id.* In terminating the rights of a parent, the court must give "primary consideration to the developmental, physical, and emotional needs and welfare of the [c]hildren." 23 Pa. C.S.A. §2511(b).

The Court can appreciate that Mother cares for the Children. That said, given numerous opportunities, Mother has shown a propensity for beginning services but failing to follow through. Mother began but failed to complete domestic violence counseling. Mother began but failed to complete drug and alcohol treatment. Mother began but failed to complete individual mental health counseling. Mother began, but failed to participate in casework services.

Based upon Ms. Evans's testimony, the Children are bonded with the foster parents. Terminating Mother's parental rights will not detrimentally affect the Children. In fact, the foster parents are resources who can continue to meet the Children's developmental, physical, and emotional needs. It is, therefore, in the Children's best interest to continue in the care of their foster parents.

Mother was unable or unwilling to comply with Court-ordered services, and to make the changes necessary to provide for a safe, healthy, and permanent living environment for the Children. After much reflection on the matter, and after careful consideration, the Court terminated Mother's parental rights to offer the Children the permanency they need. The Children deserve stability, permanency, and an opportunity to grow up in an environment free of the disruption and turmoil surrounding the dependency process.

Here, Mother's "right to the custody and rearing of [C]hildren is converted, upon the failure to fulfill her parental duties, to the [C]hildren's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy safe environment." *In re: B.L.W.*, 843

9

A.2d at 388. As the Superior Court has observed, "it is time to give [the Children] a chance to have [their] fundamental needs met without the constant insecurity that comes with knowing that someday, perhaps in the unreasonably distant future, [they] might again be wrenched away from [their] committed and capable caregivers." *Id.* (quoting *In re N.C.*, 763 A.2d 913, 919 (Pa. Super. Ct. 2000)).

For the foregoing reasons, the Court found that BCCYS carried its burden of establishing by clear and convincing evidence that Mother's parental rights should be terminated, and that, in fact, it is in the best interest of the Children that this occur. As such, the Court entered its Decree terminating the parental rights of Mother to the Children.[4]

BY THE COURT:

J. Benjamin Nevius, J.

Distribution:

>Clerk of the Orphans' Court
>BCCYS Solicitor
>Guardian Ad Litem
>Attorney for Mother
>Attorney for Father

Certified to be a true and correct copy of the original on file.

5-14-18
Date

Clerk of Orphans' Court

---

[4] With regard to Mother's objections based upon evidentiary rulings, which are not preserved on appeal, "[a] trial court has broad discretion to determine whether evidence is admissible and a trial court's ruling on an evidentiary issue will be reversed only if the court abused its discretion." *Com. v. Cook*, 676 A.2d 639, 647 (Pa. 1996). Accordingly, a ruling admitting evidence "will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." *Com. v. Minich*, 4 A.3d 1063, 1068 (Pa. Super. Ct. 2010) (citations omitted); *see also Com. v. Huggins*, 68 A.3d 962, 966 (Pa. Super. Ct. 2013). Here, the Court entertained, carefully considered, and ruled on evidentiary objections. All documents admitted are documents of BCCYS kept in the ordinary course of the dependency and orphans' court proceedings, and/or prepared by its caseworkers.

10